# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES LYNN STYERS,
              *Petitioner-Appellant,*

v.

DORA B. SCHRIRO, Arizona
Department of Corrections,
              *Respondent-Appellee.*

No. 07-99003

D.C. No.
CV-98-02244-PHX-
EHC

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Argued and Submitted
August 20, 2008—Pasadena, California

Filed October 23, 2008

Before: Alex Kozinski, Chief Judge, Jerome Farris and
Carlos T. Bea, Circuit Judges.

Per Curiam Opinion

14855

**COUNSEL**

Cary Sandman of Waterfall Economidis, Caldwell, Hanshaw & Villamana, Tucson, Arizona, and Amy Beth Krauss, Tucson, Arizona, for the petitioner-appellant.

Terry Goddard, Attorney General, and Jeffrey A. Zick, Kent Cattani and J.D. Nielsen, Assistant Attorney General of the State of Arizona, Phoenix, Arizona, for the respondent-appellee.

**OPINION**

PER CURIAM:

James Lynn Styers, an Arizona state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition, challenging his conviction and death sentence for conspiracy, first degree murder, and kidnaping. We affirm the district court on all counts, except Styers' claim that the Ari-

zona Supreme Court failed to fulfill its obligations under *Clemons v. Mississippi*, 494 U.S. 738 (1990).

## FACTUAL AND PROCEDURAL BACKGROUND

In early December 1989, Styers shot and killed the four-year-old son of Debra Milke, the woman with whom he and his daughter shared an apartment.[1] A jury subsequently convicted him of first degree murder, conspiracy to commit first degree murder, child abuse and kidnaping. With respect to the murder count, the trial court found three statutory aggravating factors and no mitigating factors sufficiently substantial to call for leniency, and imposed the death penalty.

After exhausting his direct appeals[2] and state collateral review, Styers petitioned for a writ of habeas corpus in federal court, raising a number of constitutional claims regarding his trial and sentencing proceedings. The district court denied his petition, but granted a certificate of appealability as to Styers' claim that he received ineffective assistance of counsel. We expanded the certificate of appealability to include also Styers' claims that the Arizona Supreme Court failed adequately to narrow a facially vague aggravating factor applied in his case, and failed to fulfill its constitutional obligation, under *Clemons,* to reweigh all aggravating and mitigating factors after striking one of the aggravating factors.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over Styers' habeas petition under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 1291.

---

[1]For a more detailed discussion of the facts, see the Arizona Supreme Court's opinion in Styers' direct appeal, *State v. Styers*, 177 Ariz. 104, 865 P.2d 765 (1993).

[2]The child abuse conviction and sentence were vacated on direct appeal. *See Styers*, 177 Ariz. at 117, 865 P.2d at 778. The remaining convictions were affirmed. *Ibid.*

Styers filed his § 2254 petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Habeas relief is therefore available only if the state court ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## DISCUSSION

### I.   Ineffective Assistance of Counsel

Styers contends that he received ineffective assistance of trial counsel based on counsel's failure to move to strike the jury panel on the grounds of prejudicial pre-trial publicity.[3]

### A.   Pre-Trial Publicity

The body of Christopher Milke was found by police in the evening of Sunday, December 3, 1989. The following day, the Arizona Republic, a Phoenix area newspaper, reported on its front page that Milke, Styers, and Roger Scott were arrested and charged with first degree murder. The paper further reported that Milke was not present when the boy was killed, but conspired with "the other suspects to have her son killed." The following day, another article appeared on the front page of the paper speculating as to the possible motives for the killing, including life insurance proceeds and possible abuse. However, the article also reported that the medical examiner who performed the autopsy found no indication of either

---

[3]Although the district court certified additional allegations of ineffective assistance of counsel, Styers does not raise these allegations in his opening brief. We deem them waived. *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990); *United States v. King*, 257 F.3d 1013, 1029 n.5 (9th Cir. 2001).

physical or sexual abuse. The article ultimately indicated that the chief motive appeared to be that Milke and Styers felt the boy was too much trouble, but noted that Styers' three-year old daughter, who also lived at the apartment, was not harmed. By the third day, the newspaper reported the substance of Scott's statement to police, which included his assertion that he was to receive $250 from Styers for his help and that he drove Styers and Christopher to the general vicinity of the crime scene, after which Styers walked Christopher to a nearby wash[4] and shot him three times. Subsequent articles also reported on the funeral proceedings and reactions by community members to the killing. One article printed several written statements of fourth grade school children; while most focused on their sorrow for Christopher, several children also stated that death was the appropriate punishment for the killers. A total of twenty-five articles about the crime were published in the month of December.

However, in the next seven months (January 1st 1990 through September 10, 1990), only five more articles regarding the crime were published.

Debra Milke was the first of the three defendants to proceed to trial; her trial began on September 11, 1990. Over the next month, twenty-six articles on Milke's trial were published. While the majority of these articles focus on the contents of Milke's confession, a few contain references to Styers as the alleged triggerman and someone who plotted the murder with Milke. The jury returned a guilty verdict in Milke's case on Friday, October 12, 1990.

Jury selection for Styers' trial began three days later on October 15, 1990.

---

[4]A "wash," also called an "arroyo," is a "dry channel lying in a semiarid or desert area and subject to flash flooding during seasonal or irregular rainstorms." 1 New Encyclopedia Britannica 590 (15th ed.1998).

### B.    Voir Dire Proceedings

The voir dire was conducted entirely by the trial judge. The first group of prospective jurors called for questioning consisted of a venire of thirty-six. After notifying the panel of the charges against Styers, the trial judge asked if anyone had "seen, heard, or read anything about the case." The trial judge observed that "[v]irtually everybody" raised his or her hand. The trial judge then asked whether any of the prospective jurors had formed any opinion as to the "guilt or innocence" of the defendant. Those who raised their hands in response to this question were then questioned individually, and asked whether they would be able to set aside their opinion. Any juror who indicated in the negative was struck by the trial judge. As jurors were excused, new prospective jurors were rotated into the mix from a separate pool consisting of forty-four. Of these, thirty-nine stated that they had heard of the case, and eighteen admitted to having formed opinions they could not set aside. All eighteen were excused.

Of the final twelve jurors who rendered the verdict, six came from the group of thirty-six who had "virtually" all heard of the case, while the other six came from the group of forty-four. Of these latter six, only one had not heard of the case. However, none of the twelve jurors stated that he or she had formed an opinion about this case — either qualified or unqualified.

### C.    Ineffective Assistance of Counsel

**[1]** To establish ineffective assistance of counsel, Styers must show that defense counsel's performance was objectively deficient and resulted in prejudice. *See Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)). Thus, Styers must not only demonstrate that defense counsel's failure to move to strike the jury panel was out of "the wide range of professionally competent assistance," *see*

*Strickland*, 466 U.S. at 690, but also that, had counsel so moved, there is reasonable probability that the motion would have been granted.[5] *Id.* at 695; *Kimmelman v. Morrison*, 477 U.S. 365, 383-91 (1986). As such, "[t]he governing legal standard plays a critical role in defining the question to be asked in assessing prejudice for counsel's errors." *Strickland,* 466 U.S. at 695.

[2] In reviewing challenges to jury panels based on pre-trial publicity, the Arizona courts apply the same criteria as that employed by the United States Supreme Court. Thus, a defendant challenging a jury panel exposed to pre-trial publicity must show that the publicity likely resulted in the denial of a trial by fair and impartial jurors. *See State v. Greenawalt*, 128 Ariz. 150, 163, 624 P.2d 828, 841 (1981) ("our inquiry is whether the publicity, extensive or otherwise, was prejudicial to the point of having the probable effect of precluding a trial by fair and impartial jurors"); *Dobbert v. Florida*, 432 U.S. 282, 302-03 (1977) (examining the impact of press coverage on juror's impartiality); *Murphy v. Florida*, 421 U.S. 794, 799-801 (1975) (same).

In establishing his claim, a defendant may not merely rely on the fact that the prospective jurors were exposed to pre-

---

[5]Generally, a defendant claiming ineffective assistance of counsel for failure to file a particular motion must not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome in the entire case. *See, e.g., Kimmelman*, 477 U.S. at 390-91 (explaining that to establish prejudice, a defendant must show not only that counsel would have prevailed on a suppression motion, but also a reasonable probability that exclusion of the evidence would have resulted in acquittal). However, because the motion in this case directly implicates the impartiality of the jury itself (as explained *infra*) no such additional or separate showing of prejudice would appear necessary. *See Dyer v. Calderon*, 151 F.3d 970, 973, n.2 (9th Cir. 1998) (conviction obtained via jury containing even one biased member requires automatic reversal); *see also Sullivan v. Louisiana*, 508 U.S. 275, 281-282 (1993) (deprivation of right to jury constitutes structural error).

trial publicity, but must also establish that "the jurors [had] formed preconceived notions concerning the defendant's guilt *and* that they [could] not lay those notions aside." *State v. Walton*, 159 Ariz. 571, 580, 769 P.2d 1017, 1026 (1989) (italics added) (citation omitted); *State v. Jones*, 197 Ariz. 290, 307, 4 P.3d 345, 362 (2000) ("[W]e are concerned with the prejudicial *effect* of pretrial publicity, rather than merely the *amount* of publicity.") (italics in original).

**[3]** Finally, the Arizona courts fully recognize that, if "a defendant can show pretrial publicity so outrageous that it promises to turn the trial into a mockery of justice or a mere formality, prejudice will be presumed without examining the publicity's actual influence on the jury." *State v. Bible*, 175 Ariz. 549, 563, 858 P.2d 1152, 1166 (1993) (citing *Rideau v. Louisiana*, 373 U.S. 723 (1963)); *see also Greenawalt*, 128 Ariz., 162-63, 624 P.2d 840-841 (citing *Sheppard v. Maxwell*, 384 U.S. 333 (1966)); *Nebraska v. Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976) (commenting that courts rarely presume prejudice due to outrageous pre-trial publicity).

### D. Analysis

Styers acknowledges that he is not basing his ineffective assistance of counsel claim on a theory of actual prejudice — presumably because the voir dire transcript reveals no prejudice on the part of the seated jurors and he submitted no affidavits to the contrary to the post-conviction court. Instead, Styers argues that the pre-trial publicity was so pervasive and inflammatory that it created a presumption of prejudice and thus trial counsel would have prevailed on a motion to strike the entire venire. The argument fails on this record.

**[4]** In *Murphy v. Florida*, 421 U.S. 794, 798-800 (1975), the Supreme Court summarized the rare cases in which it had previously found presumptive prejudice based on pre-trial publicity. After so doing, the Court explained that these cases "cannot be made to stand for the proposition that juror expo-

sure to information about a state defendant's prior convictions *or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process*." *Id.* at 799 (italics added). Since *Murphy*, the Supreme Court has twice rejected presumptive prejudice claims based on pretrial publicity in cases involving far more inflammatory publicity than that in Styers' case.

For example, in *Patton v. Yount,* 467 U.S. 1025 (1984), the media revealed the defendant's "prior conviction for murder, his confession, and his prior plea of temporary insanity." *Id.* at 1029. Despite the fact that 77% of the venire questioned admitted they would "carry an opinion into the jury box," and 8 out of 14 jurors and alternates seated admitted that they at some time had formed an opinion as to defendant's guilt, *id.* at 1029-30, the Court concluded that "the voir dire testimony and the record of publicity do not reveal the kind of 'wave of public passion' that would have made a fair trial unlikely by the jury that was empaneled as a whole." *Id.* at 1040. It set aside the Third Circuit's finding of "presumed prejudice." *Id.* at 1031-32, 1040.

In *Mu'Min v. Virginia*, 500 U.S. 415 (1991), the Court reviewed a claim in which the petitioner contended that his right to an impartial jury was violated because the trial judge refused to question prospective jurors about the specific contents of the news reports to which they had been exposed. *Id.* at 417, 431. The defendant had submitted 47 articles to the trial court relating to the murder. *Id*. at 418. One or more of these articles discussed details of the murder and investigation, included information about defendant's prior criminal record, information regarding his prior murder conviction, and an indication that he had confessed to the instant killing. *Ibid.* Of the twelve jurors who rendered the final verdict, eight had heard of the case. *Id*. at 421. However, none of them stated he had formed an opinion and all swore that they could enter the jury box with an open mind. *Ibid*. In rejecting petitioner's claim that further inquiry of the jurors was constitu-

tionally required, the Court noted that this was not the type of case where a "presumption of prejudice" was created by the pre-trial publicity and recognized that its holding may have been different had that been the case. *Id.* at 429-30.

**[5]** In light of *Patton* and *Mu'Min*, Styers cannot demonstrate that his trial attorney would have likely prevailed on a request to strike the jury panel. Unlike in *Mu'Min* and *Patton,* there were no prior articles indicating that defendant had confessed to the crime, nor was there any mention of prior criminal history on his part. *Mu'Min,* 500 U.S. at 418; *Patton,* 467 U.S. at 1029. And while Styers points to statements made by his accomplice Scott which were reported in the newspaper but not admitted at his trial, these statements were substantially similar to evidence which was ultimately admitted and far less damaging than the inadmissible evidence published in *Patton. See Patton*, 467 U.S. at 1029 (trial upheld as fundamentally fair, despite the fact that "publicity revealed [defendant's] prior conviction for murder, his confession, and his prior plea of temporary insanity — information *not admitted into evidence at trial*.") (italics added). Finally, the articles published during Milke's trial — and thus closer in time to Styers' trial — were virtually all factual accounts of her trial proceedings, rather than opinion pieces containing inflammatory rhetoric. *See Murphy*, 421 U.S. at 801 n.4 (noting important distinction between "largely factual publicity" and "that which is invidious or inflammatory").

Appearing to recognize that the Supreme Court opinions are not in his favor,[6] Styers relies almost exclusively on our

---

[6]As explained earlier, in reviewing jury challenges due to pre-trial publicity, the Arizona state courts typically apply the Supreme court precedent in this area. Thus, Styers would fare no better under state law. *See, e.g.*, *State v. Bible*, 175 Ariz. 549, 563-66, 858 P.2d 1152, 1166-69 (1993) (citing Supreme Court precedent prior to rejecting presumptive prejudice claim involving 130 news articles, some of which incorrectly labeled defendant as a child molester and mentioned that he failed a lie detector

decision in *Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005), in which we held that the denial of a change of venue motion violated due process. However, *Daniels* was issued almost fifteen years after Styers' voir dire proceedings and decided under pre-AEDPA standards. *Daniels*, 428 F.3d at 1196, 1211-1212. As such, Styers cannot rest his ineffective assistance of counsel claim on *Daniels*.[7] *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (holding that an attorney is not ineffective for failing to anticipate a decision in a later case); *State v. Gates*, 118 Ariz. 357, 359, 576 P.2d 1357, 1359 (1978) (state courts are not bound by lower federal court precedent).

Finally, Styers argues that the state court's finding of a fair and impartial jury should not be accorded a presumption of correctness under 28 U.S.C. § 2254(e)(1) because the voir dire proceedings were far too brief and cursory to support such a finding. However, even if Styers is correct on this point,[8]

---

test); *State v. Jones*, 197 Ariz. 290, 307, 4 P.3d 345, 362 (2000) (citing Supreme Court precedent for proposition that courts rarely presume prejudice based on pre-trial publicity and ultimately rejecting claim in trial preceded by 850 articles in print or television and removal of 30 potential jurors for fixed opinion).

[7]*Daniels* is distinguishable in any event, as the publicity therein was far more inflammatory. Daniels was convicted for shooting and killing two officers who had previously shot him while he was fleeing from a bank robbery, rendering Daniels a paraplegic. *Daniels*, 428 F.3d at 1186. Prior to Daniels' trial, a nine foot statue commemorating fallen police officers was erected and publicly unveiled across from the courthouse where his trial took place, numerous published letters called for his execution, and facts regarding his past criminal history— including an arrest for shooting at a police officer — were published by the press. *Id.* at 1211-12.

[8]In *Patton,* the Supreme Court held that the question of whether an individual juror could be fair and impartial was "plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestations of impartiality have been believed," 467 U.S. at 1036, 1038, noting that "the determination is essentially one of credibility, and therefore largely one of demeanor." However, the Court left open the question of whether a presumption of correctness should be applied to a trial court's finding that a "jury as a whole is impartial." *Id.* at 1032, n.7.

his subsequent failure to carry his burden of persuasion in the post-conviction court — through either a showing of actual or presumed prejudice — precludes relief. *See Bible*, 175 Ariz. at 564, 858 P.2d at 1167 ("The burden to show that pretrial publicity is presumptively prejudicial clearly rests with the defendant and is 'extremely heavy.' ") (citation omitted); *cf. Daniels*, 428 F.3d at 1211 (defendant conceded that "record contains no findings that any jurors demonstrated partiality or prejudice that could not be laid aside").

**[6]** The post-conviction state court's determination that Styers "failed to establish . . . . both prongs of ineffective assistance of counsel" cannot be deemed unreasonable under the AEDPA. *See Edwards v. Lamarque*, 475 F.3d at 1125-26.

## II.   Application of A.R.S. § 13-703(F)(6)

**[7]** Styers alleges that in applying Arizona's "especially heinous or depraved" aggravating factor, under subsection (F)(6), the state courts failed to apply a constitutionally sufficient narrowing construction. However, the United States Supreme Court has squarely rejected this claim. *See Lewis v. Jeffers*, 497 U.S. 764, 777 (1990) (stating that *Walton v. Arizona*, 497 U.S. 639 (1990), "disposes of respondent's claim that Arizona has not construed its subsection (F)(6) aggravating circumstance in a constitutionally narrow manner). Thus, so long as the Arizona State Supreme Court applied its narrowing construction to the facts of Styers' case, all that remains for our review is whether the "state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Jeffers,* 497 U.S. at 780. In this regard, "[a] state court's finding of an aggravating circumstance in a particular case — including a de novo finding by an appellate court that a particular offense is 'especially heinous . . . or depraved' — is arbitrary or capricious if and only if no reasonable sentencer could have so concluded." *Id.* at 783. This requires the application of the *Jackson v. Virginia*, 443 U.S. 307 (1979), standard. *Id.*

Here, when the Arizona Supreme Court rejected Styers' (F)(6) challenge, it applied the narrowing construction contained within *State v. Gretzler*, wherein it had identified five circumstances that support a finding of heinousness and depravity.[9] 135 Ariz. 42, 52, 659 P.2d 1, 11 (1983). The court then found that the senselessness of the murder and the helplessness of the four-year old victim, as well as Styers' special relationship to the child as his full-time caregiver, supported the finding that this murder was especially heinous and depraved. *See Styers*, 177 Ariz. at 115; 865 P.2d at 776.

**[8]** The record reveals sufficient evidence to support the application of the (F)(6) finding. *See Gretzler*, 135 Ariz. at 52, 659 P.2d at 11 (noting that "either or both" the senselessness and helplessness factors may, "together with other circumstances present in a particular case," lead to the conclusion that the offense was heinous or depraved); *see also Correll,* 137 F.3d at 1420 (rejecting challenge to application of F(6) factor where trial record revealed, *inter alia*, helplessness of victims and senselessness of murders). The Arizona Supreme Court's finding that Styers committed the murder in an "especially heinous . . . or depraved manner," was neither arbitrary nor capricious. *Jeffers*, 497 U.S. at 784; *cf. Smith v. Mitchell*, 453 F.3d 1203, 1206 (9th Cir. 2006) ("AEDPA requires the federal courts to review *Jackson* claims with additional deference.").

### III. *Clemons* **duty to re-weigh**

**[9]** On direct review, the Arizona Supreme Court found the aggravating factor of pecuniary gain to be invalid. Styers contends that the court then failed to properly re-weigh the aggra-

---

[9]In both *Walton* and *Jeffers*, the Arizona Supreme court had cited *Gretzler* in construing and applying the "especially heinous and depraved" factor. *Jeffers*, 497 U.S. at 770-71 (citing *State v. Jeffers*, 135 Ariz. 404, 430, 661 P.2d 1105, 1131 (1983)); *Walton*, 497 U.S. at 645 (citing *State v. Walton*, 159 Ariz. 571, 587, 769 P.2d 1017, 1033 (1989).

vating and mitigating circumstances as required by *Clemons v. Mississippi,* 494 U.S. 738, 748-749 (1990). Under *Clemons*, an appellate court in a "weighing state," such as Arizona, can affirm a death sentence based on an invalid aggravating factor only after conducting either a harmless error review or reweighing the mitigating evidence against the remaining valid aggravating factors. *See Jeffers v. Lewis*, 38 F.3d 411, 414-415 (9th Cir. 1994) (en banc)*, citing Clemons*, 494 U.S. at 741. In so doing, it must consider all relevant mitigating evidence proffered by the defendant. *See Jeffers v. Lewis*, 38 F.3d at 414; *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982).

## A.    Exhaustion/Procedural default

**[10]** The district court dismissed the *Clemons* claim on procedural default grounds, finding first that Styers failed to exhaust it in the Arizona state courts and, second, that he would now be barred from doing so under Arizona Rule of Criminal Procedure 32.2(a)(3). However, after the Arizona Supreme Court had decided his appeal, Styers filed a motion for reconsideration pursuant to Rule 31.18 of the Arizona Rules of Criminal Procedure. *See Correll v. Stewart*, 137 F.3d 1404, 1418 (9th Cir. 1998) (noting that a motion for reconsideration is "an avenue of relief that the Arizona Rules of Criminal Procedure clearly outline"). In his motion, Styers specifically argued that the court had failed to consider relevant mitigating evidence during its independent review of the sentence, in violation of *Eddings v. Oklahoma*, 455 U.S. 104, 115-16 (1982), and the Eighth Amendment. Styers' *Clemons* claim is based on a violation of *Eddings*; he alleges that the Arizona Supreme Court did not satisfy its constitutional duty to reweigh the aggravating and mitigating factors because the court improperly refused to consider relevant mitigating evidence. His motion for reconsideration adequately informed the state court of the factual and legal basis for this claim. It is therefore exhausted. *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

Although the district court did not resolve this claim on the merits, we nevertheless do so here, as is our prerogative. *See Granberry v. Greer*, 481 U.S. 129, 134 (1987) (Appellate courts have discretion to "determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional . . . district court proceedings before reviewing the merits . . . .").

### B.   Merits

In conducting its independent review of the propriety of Styers' death sentence, the Arizona Supreme Court stated that it had "considered all of the proffered mitigation," *see Styers*, 177 Ariz. at 117, 865 P.2d at 778. However, its analysis prior to this statement indicates otherwise.

With regards to the evidence that Styers suffered from post-traumatic stress disorder as a result of his combat service in Vietnam, the court stated the following:

> This could also, in an appropriate case, constitute mitigation. *See State v. Bilke*, 162 Ariz. 51, 53, 781 P.2d 28, 30 (1989) . . . *However*, two doctors who examined defendant could not connect defendant's condition to his behavior at the time of the conspiracy and the murder.
>
> *Styers*, 177 Ariz. at 116, 865 P.2d at 777. (italics added.)

The court's use of the conjunctive adverb "however," following its acknowledgment that such evidence "could" in certain cases constitute mitigation, indicates that this was not such a case.[10] In *Bilke*, the case cited by the *Styers* court as an

---

[10]Dictionary definitions of "however" include "nevertheless; yet; in spite of that; all the same." Webster's New World College Dictionary (4th ed. 2006).

example of when post-traumatic stress disorder evidence could constitute mitigation, the defendant presented newly-discovered evidence including a psychological report which specifically tied his disorder to his criminal acts. *See Bilke*, 162 Ariz. at 52, 781 P.2d at 29. The *Bilke* court remanded the matter for an evidentiary hearing, stating, "[h]ad the sentencing judge been aware that a mental disease known as post-traumatic disorder existed . . . and that the disorder was a *causative* factor leading to the commission of the crimes, he might well have sentenced the defendant differently." *Bilke*, 162 Ariz. at 53, 781 P2d at 30 (italics added); *cf. State v. Hoskins*, 199 Ariz. 127, 152, 14 P.3d 997, 1022 (2000) (en banc) ("If the defendant fails to prove causation, *the circumstance will not be considered mitigating*.") (italics added); *State v. Vickers*, 129 Ariz. 506, 516, 633 P.2d 315, 325 (1981) (noting that evidence presented by defendant established only that character disorder existed, not that the disorder "impaired his capacity on the night [the victim] was murdered *so as to constitute a mitigating circumstance*.") (italics added.)

**[11]** In applying this type of nexus test to conclude that Styers' post traumatic stress disorder did not qualify as mitigating evidence, the Arizona Supreme court appears to have imposed a test directly contrary to the constitutional requirement that all relevant mitigating evidence be considered by the sentencing body. *Smith v. Texas*, 543 U.S. 37, 45 (2004) (citing *Eddings,* and stating that nexus test is a test "we never countenanced and now have unequivocally rejected," and that this holding was "plain under [its] precedents"); *see Eddings*, 455 U.S. at 114-15 ("[t]he sentencer, and the [appellate court] on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.") As such, the court could not have fully discharged its obligations under *Clemons. Cf. Jeffers*, 38 F.3d at 418 (rejecting *Clemons* claim where it was "clear" that all proffered evidence in mitigation had been considered). We reverse the district court's decision denying relief with regards to this claim. In so doing, how-

ever, we neither express nor imply any opinion as to the appropriate sentence in this case. This is a matter for the state courts, so long as the constitutional obligations under *Eddings* and *Clemons* are honored.

## DISPOSITION

**[12]** We vacate the district court's judgment denying the writ of habeas corpus and remand with instructions to grant the writ with respect to Styers' sentence unless the state, within a reasonable period of time, either corrects the constitutional error in petitioner's death sentence or vacates the sentence and imposes a lesser sentence consistent with law.

**AFFIRMED in part; VACATED in part and REMANDED.**