**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT HENRY MOORMANN,
    *Petitioner-Appellant,*

v.

DORA B. SCHRIRO,
    *Respondent-Appellee.*

Nos. 08-99035
     12-15395

D.C. No.
2:91-CV-01121-
ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Chief District Judge, Presiding

Argued and Submitted
February 27, 2012—Phoenix, Arizona

Filed February 28, 2012

Before: Mary M. Schroeder, M. Margaret McKeown, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Schroeder

## COUNSEL

Julie Hall, Oracle, Arizona, for petitioner-appellant Robert Henry Moormann.

John Pressly Todd, Deputy Attorney General, Phoenix, Arizona, for respondent-appellee Dora B. Schriro.

**OPINION**

SCHROEDER, Circuit Judge:

Robert Moormann applies for a stay of execution and permission to file a second or successive habeas petition in federal district court. *See* 28 U.S.C. § 2244(b)(3). Moormann was convicted in 1985 of the first-degree murder of his adoptive mother, Roberta Moormann, and sentenced to death. The murder took place in a Florence, Arizona motel room while Moormann was on a furlough from the state prison where he was serving a sentence of nine years to life for kidnapping. After stabbing and suffocating Roberta to death, he dismembered the body and disposed of it in trash bags. He is scheduled to be executed on February 29, 2012.

His case has already been before us twice. The facts and procedural background are fully contained in our prior opinions. *See Moormann v. Ryan*, 628 F.3d 1102 (9th Cir. 2010); *Moormann v. Schriro*, 426 F.3d 1044 (9th Cir. 2005). We summarize what is relevant to this proceeding.

In 2005, in *Moormann v. Schriro*, we considered an appeal from the denial of Moormann's first habeas petition pursuant to 28 U.S.C. § 2254, where he had raised a number of claims of ineffective assistance of counsel in connection with his state court trial and appeal. The claims had been considered procedurally defaulted under Arizona law by the state courts, and by the district court, because he had not raised them in his state court appeal. We affirmed with respect to most of his claims, but observed that the claims of ineffective assistance of counsel were not timely litigated in state court because of a conflict of interest that established cause for the default. We remanded those that appeared colorable to the district court to determine whether there was prejudice to excuse the default. 426 F.3d at 1059-60.

In our second opinion five years later, we considered the ineffectiveness issues that the district court, after the remand,

had certified for appeal. We held there was no prejudice shown either for the claim that his counsel should have pursued a defense that Moormann acted impulsively, or for the claim that his counsel should have called more mitigation witnesses. 628 F.3d at 1114.

Moormann has asked this court for permission to file a successive habeas petition, or, in the alternative, to have this court recall the mandate of our 2010 opinion so that he can file a belated Rule 60(b) motion in the district court. The district court in the meantime has considered the merits of his 60(b) motion and denied it, so he has appealed that ruling. We consolidate the two proceedings for purposes of decision.

On February 27, 2012, the Arizona Supreme Court denied Moormann's February 26, 2012 motion for stay of execution and petition for review from the Pinal County Superior Court's February 22, 2012 order denying a hearing on mental retardation and denying Moormann's other claims as precluded. We are satisfied that Moormann's claims now before this Court are fully exhausted.

The standard Moormann must meet to file a second or successive petition is very high. Under 28 U.S.C. § 2244(b)(2), this court must dismiss his request unless:

> (A) [he] shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evi-

dence that, but for constitutional error, no reasonable factfinder would have found [Moormann] guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

It is similarly difficult to convince an appellate court to recall its mandate for the filing of a new proceeding after an appeal has long become final. We do so only in extraordinary circumstances. *Carrington v. United States*, 503 F.3d 888, 891 (9th Cir. 2007).

**[1]** The immediate relief requested is a stay of execution. A federal court will only grant a stay of execution where the inmate seeking the stay can show a significant possibility of success on the merits. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

For the following reasons, we conclude Moormann has not met these exacting standards.

**[2]** Moormann's current diligent and thorough counsel are, in essence, asking us to reopen his case so that he can pursue a claim for habeas relief on two issues. The first issue is that both of his lawyers in state court, the first having been counsel for the direct appeal and the first postconviction proceeding, and the second the counsel for the second state postconviction petition, failed so utterly to raise a colorable claim that either one or both of them effectively "abandoned" Moormann. The Supreme Court has only recently recognized that complete abandonment of representation can justify a belated reopening of a matter considered closed. *Maples v. Thomas*, 132 S.Ct. 912 (2012).

Moormann contends that he could not previously have argued "abandonment," because the Supreme Court only recently recognized it as establishing cause for default, and in this he is correct. He further argues that his lawyers' conduct

was similar to the conduct of the lawyers in *Maples*, and in this he is incorrect.

In *Maples*, the lawyers ceased acting as Maples' attorneys without telling him; they did not serve as his agents in any meaningful sense, and left him in a situation where he lacked the assistance of any authorized attorney, so "that, in reality, he had been reduced to *pro se* status." *Id.* at 927. Significantly, they failed to file a notice of appeal on his behalf. The Court did not state whether this holding should apply retroactively. *See* 28 U.S.C. § 2244(b)(2)(A) (new rule must be made retroactive by the Supreme Court). But we assume, for purposes of this opinion, that it should.

**[3]** Even assuming that *Maples* applies retroactively, Moormann cannot make a prima facie showing that his postconviction counsel abandoned him within the meaning of *Maples*. Moormann concedes that he was represented by two lawyers in his state postconviction proceedings. The first, who had been counsel on direct appeal and the first postconviction petition, withdrew, so that the second could assert claims that the first lawyer was ineffective on direct appeal, in addition to other claims of constitutional violations. Moormann was thus always represented by active counsel. The fault Moormann attributes to the second lawyer is that he did not conduct investigations that would have revealed additional evidence supporting Moormann's mitigation claims of a difficult childhood, mental disabilities, and a possibly incestuous relationship with the victim. Such alleged failure to investigate may be a claim of serious negligence, but it is not "abandonment." *See Maples*, 132 S.Ct. at 923. For this reason, Moormann fails to state a prima facie claim under *Maples*.

Moreover, we actually considered the merits of essentially the same claim in his first federal habeas petition, where he argued that counsel on the direct appeal was ineffective because he failed to conduct investigations that would have revealed mitigating evidence. *See Moormann v. Schriro*, 426

F.3d 1044. We remanded for the district court to consider the claim and then held, on the merits, that "[t]he new material would not have affected the result" of Moormann's sentencing. *Moormann v. Ryan*, 628 F.3d at 1114. Moormann is not now entitled to renew the same claim on the theory that he was "abandoned" in the state court. Our analysis is thus not affected by the pending Supreme Court decision in *Martinez v. Schriro*, 623 F.3d 731 (9th Cir. 2010), *cert. granted sub nom. Martinez v. Ryan*, 131 S.Ct. 2960 (2011).

The second issue that Moormann seeks to pursue is that he is now mentally retarded and cannot be executed for that reason. He relies on *Atkins v. Virginia*, 536 U.S. 304 (2002), where the Supreme Court held that a person who is mentally retarded may not be sentenced to death. Moormann's trial defense of insanity was rejected by the jury. The state, in its responses to this petition and to Moormann's petitions in the state courts, has supplied documentation from the record that shows that Moormann was diagnosed as having an IQ well above 70 or as not mentally retarded in his early twenties in 1972, at the time of his trial in 1985, and again in 1998.

In support of his claim, he now relies on the affidavit of a psychologist stating that one of two recently administered tests shows Moormann's IQ to be below 70. The psychologist expressed the opinion that "if the time and resources are obtained to conduct a formal assessment" Moormann would qualify for the mental retardation diagnosis. Moormann seeks more time for further tests that might more conclusively establish that his IQ has been diminished by recent surgery and a stroke in 2007.

**[4]** The Supreme Court in *Atkins* did not define mental retardation as a matter of federal law. With respect to mental retardation, as with respect to the related issue of insanity, *see Ford v. Wainwright*, 477 U.S. 399, 416-17 (1986), the Supreme Court left to the states "the task of developing appropriate ways to enforce the constitutional restriction upon

[their] execution of sentences." *Atkins*, 536 U.S. at 317 (quotation marks omitted); *see also Schriro v. Smith*, 546 U.S. 6, 6-8 (2005) (summarily vacating a Ninth Circuit order remanding a habeas petition to the Arizona courts for a jury to make the *Atkins* determination, and emphasizing that *Atkins* left enforcement to the states).

**[5]** Moormann presented his mental retardation claim to the Arizona Supreme Court last week. On February 24, 2012, the Arizona Supreme Court denied Moormann's motion for a stay of execution. In that order, the Arizona Supreme Court expressly noted that under Arizona law, a "defendant is not statutorily deemed to have mental retardation unless he has a full scale IQ of 70 or lower, and the onset of that condition occurs before age eighteen." A.R.S. § 13-753(K)(3), (5). That court looked to Arizona's statutory definition of mental retardation, now termed "intellectual disability," as a condition entailing, among other things, the onset of an IQ below 70 before the age of 18. A.R.S. § 13-753(K). The Arizona Supreme Court examined Moormann's medical history and determined that there was little likelihood that Moormann could meet the state's definition of mental retardation. *State v. Moormann*, No. CR-85-0115-AP, Order at *4-*5 (Ariz. Feb. 24, 2012) ("Mental retardation, as defined in § 13-753(K)(3) begins in childhood and cannot develop later in life."). Arizona requires clear and convincing evidence in this instance. *See* A.R.S. § 13-753(G) (a defendant with an IQ of 70 or lower (but above 65) must prove intellectual disability by clear and convincing evidence); *State v. Moormann*, No. CR-85-0115-AP, Order at *4 (Ariz. Feb. 24, 2012) ("Because Dr. Weinstein intends to testify that Moormann's recent IQ scores were affected by his post-trial medical conditions, even if credited, Dr. Weinstein's affidavit does not constitute clear and convincing evidence that Moormann had mental retardation in childhood, only that his recent medical problems have lowered his IQ."). We must defer to that conclusion under *Atkins*. *See Atkins*, 536 U.S. at 317.

Arizona's definition is by no means unique. Both the American Association on Mental Retardation ("AAMR") and the American Psychiatric Association ("APA") define mental retardation as requiring that the onset or manifestation of the condition occur before the age of eighteen. *See Atkins* at 308, n.3.

**[6]** Finally, even if Moormann could now conclusively show that he is currently mentally retarded, he would be entitled to habeas relief only if, at a minimum, the Arizona court violated clearly established federal law. *See* 28 U.S.C. § 2254(d). There is no clearly established federal law that a person who was not mentally retarded at the time of the crime or the trial may nevertheless be exempted from the death penalty pursuant to *Atkins*, because of subsequent mental deterioration. The law appears to be to the contrary and does not indicate retardation is a product of changing circumstances. *See Heller v. Doe*, 509 U.S. 312, 323 (1993) ("Mental retardation is a permanent, relatively stable condition . . . ."). We therefore cannot say that the Arizona Supreme Court's decision is "contrary to," or "an unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d). *See also Ochoa v. Workman*, 2012 WL 130718, at *4-*5 (10th Cir. 2012) (holding that Oklahoma's determination that mental retardation is a static condition is neither contrary to, nor an unreasonable application of, *Atkins*).

**[7]** For the foregoing reasons, we DENY Moormann's request to file a second habeas petition and his motion to recall the mandate. We AFFIRM the district court's denial of the Rule 60(b) motion. We find that Moormann has failed to show a strong likelihood of relief on the merits and so we DENY his motion for a stay of execution.

**AFFIRMED** and relief **DENIED**.