**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

RICHARD DALE STOKLEY,
    *Petitioner - Appellant*,

v.

CHARLES L. RYAN,
    *Respondent - Appellee*.

</td>
<td>

No. 09-99004

D.C. No.
4:98-CV-00332-FRZ
District of Arizona,
Tucson


ORDER AND
AMENDED ORDER

</td>
</tr>
</table>

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, Senior District Judge, Presiding

Argued and Submitted
November 5, 2012—Portland, Oregon

Filed November 15, 2012
Amended November 21, 2012

Before: M. Margaret McKeown, Richard A. Paez,
and Carlos T. Bea, Circuit Judges.

Order;
Amended Order;
Dissent by Judge Paez

## SUMMARY[*]

### Habeas Corpus/Death Penalty

The panel withdrew the order issued on November 15, 2012, filed an amended order, and denied a petition for panel rehearing.

In its amended order, the panel denied a motion to stay the mandate by Richard Stokley, a state prisoner who was sentenced to death. Stokley moved to stay the mandate on the ground that *Maples v. Thomas*, 132 S. Ct. 912 (2012) (holding that abandonment by post-conviction counsel could provide cause to excuse procedural default of a habeas claim), constitutes an intervening change in the law that could warrant a significant change in result. The panel assumed without deciding that there was *Maples* error, but held that Stokley cannot establish actual prejudice.

Judge Paez dissented. He would stay the mandate and remand this case to the district court for it to determine if cause and prejudice exist, and to consider the merits of the claim if warranted.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Jennifer Yolanda Garcia (argued), Federal Public Defender's Office, Phoenix, Arizona; Amy Krauss, Law Office of Amy B. Krauss, Tucson, Arizona; Cary Sandman, Federal Public Defender's Office, Tucson, Arizona; Jon M. Sands, Federal Public Defender's Office, Phoenix, Arizona, for the Petitioner-Appellant.

Thomas C. Horne, Arizona State Attorney General; Jonathan Bass (argued), Assistant Attorney General Criminal Appeals/Capital Litigation Division, for the Respondent-Appellee.

## ORDER

The Order issued on November 15, 2012, is withdrawn and an Amended Order is filed concurrently with this order. With that amendment, Judges McKeown and Bea vote to deny Stokley's petition for panel rehearing and Judge Paez votes to grant the petition. No further petitions for panel rehearing will be entertained.

## AMENDED ORDER

Richard Dale Stokley, a state prisoner, was sentenced to death in 1992 for the murders of two 13-year-old girls. After pursuing direct review and post-conviction relief in the Arizona state courts, he filed a habeas petition in federal district court, which was denied on March 17, 2009. Stokley's appeal from that decision was denied by this court in *Stokley v. Ryan*, 659 F.3d 802 (9th Cir. 2011). On October

1, 2012, the Supreme Court denied Stokley's petition for certiorari. *Stokley v. Ryan*, No. 11-10249, 2012 WL 1643921 (Oct. 1, 2012). Stokley now asks this court to stay issuance of the mandate on the ground that the Supreme Court's holding in *Maples v. Thomas*, 132 S. Ct. 912 (2012), constitutes an intervening change in the law that could warrant a significant change in result. In *Maples*, the Court held that abandonment by post-conviction counsel could provide cause to excuse procedural default of a habeas claim. *Id.* at 927.

Under Federal Rule of Appellate Procedure 41(d)(2)(D), this court "must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed." Fed. R. App. P. 41(d)(2)(D). Nonetheless, this court has the authority to issue a stay in "exceptional circumstances." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1529 (9th Cir. 1989), *cert. denied*, 493 U.S. 1076 (1990). To constitute an exceptional circumstance, an intervening change in law must require a significant change in result for the parties. *See Beardslee v. Brown*, 393 F.3d 899, 901 (9th Cir. 2004) ("[A]n intervening change in the law is an exceptional circumstance that may warrant the amendment of an opinion on remand after denial of a writ of certiorari."); *Adamson v. Lewis*, 955 F.2d 614, 619-20 (9th Cir. 1992) (en banc) (finding an absence of exceptional circumstances where subsequent Supreme Court authority did not require a significant change in result). The question before us is whether Stokley has presented such an exceptional circumstance.

Stokley asks for a remand to the district court for an evidentiary hearing to determine whether, under *Maples*, he was "abandoned" by his state post-conviction attorney and

thus has cause to excuse his procedural default of his underlying claim that the Arizona Supreme Court failed to consider mitigating evidence in violation of *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982), and *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986). Under *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), Stokley is barred from litigating this procedurally defaulted claim in a federal habeas proceeding unless he can show both cause for the default and actual prejudice resulting from the alleged error. Because Stokley cannot establish prejudice and thus does not meet the exceptional circumstances threshold, we deny his motion to stay the mandate.

We assume without deciding that there was a *Maples* error. But regardless of whether *Maples* provides Stokley cause to excuse his procedural default, Stokley has not made a sufficient showing of actual prejudice. Stokley must establish "not merely that the [alleged error] . . . created a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage," infecting the entire proceeding with constitutional error. *See Murray v. Carrier*, 477 U.S. 478, 494 (1986) (citation omitted) (emphasis in original); *see also Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (prejudice requires a showing that the error has a "substantial and injurious effect" on the sentence).

Stokley has a colorable claim that the Arizona Supreme Court, when it reviewed evidence of his abusive childhood and his behavior during pre-trial incarceration, violated the *Eddings* principle that the court must consider, as a matter of law, all relevant mitigating evidence. *See Arizona v. Stokley*, 898 P.2d 454, 473 (Ariz. 1995) ("A difficult family background alone is not a mitigating circumstance. . . . This can be a mitigating circumstance only 'if a defendant can

show that something in that background had an effect or impact on his behavior that was beyond the defendant's control.' . . . Although he may have had a difficult childhood and family life, [Stokley] failed to show how this influenced his behavior on the night of the crimes.") (citations omitted); *id.* ("Although long-term good behavior during post-sentence incarceration has been recognized as a possible mitigating factor, . . . we, like the trial court, reject it here for pretrial and presentence incarceration.").

However, on balance, the Arizona Supreme Court's opinion suggests that the court did weigh and consider all the evidence presented in mitigation at sentencing. *See Stokley*, 898 P.2d at 468 ("Consistent with our obligation in capital cases to independently weigh all potentially mitigating evidence . . . [w]e turn, then, to a consideration of the mitigating factors."); *id.* at 472 ("As part of our independent review, we will address each alleged mitigating circumstance."); *id.* at 468 ("The sentencing judge must consider 'any aspect of the defendant's character or record and any circumstance of the offense relevant to determining whether the death penalty should be imposed.' . . . The sentencing court must, of course, consider all evidence offered in mitigation, but is not required to accept such evidence." (citations omitted)); *id.* at 465 ("[T]his court independently reviews the entire record for error, . . . considers any mitigating circumstances, and then weighs the aggravating and mitigating circumstances sufficiently substantial to call for leniency."); *id.* at 473 ("Family history in this case does not warrant mitigation. Defendant was thirty-eight years old at the time of the murders."). The Arizona Supreme Court carefully discussed all the statutory and non-statutory mitigating factors, step by step, in separate paragraphs in its opinion. *See id.* at 465-74.

However, even assuming the Arizona Supreme Court did commit causal nexus error as to Stokley's good behavior in jail and his difficult childhood, Stokley cannot demonstrate actual prejudice because he has not shown that the error, if any, had a substantial and injurious impact on the verdict. An error requires reversal only if it "had substantial and injurious effect or influence in determining the . . . verdict.'" *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *cf. Cullen v. Pinholster*, 131 S. Ct. 1388, 1408 (2011) (holding in a *Strickland* challenge that the test for prejudice at sentencing in a capital case is "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." (internal quotation marks omitted)).

The Arizona Supreme Court reviewed and discussed each of the aggravating and mitigating factors individually. The court found three statutory aggravating circumstances were proven beyond a reasonable doubt: (1) Stokley was an adult at the time the crimes were committed and the victims were under the age of fifteen; (2) Stokley was convicted of another homicide committed during the commission of the offense; and (3) Stokley committed the offense in an especially heinous, cruel, and depraved manner. 898 P.2d at 465-68. The Arizona Supreme Court's conclusion that there were no grounds here substantial enough to call for leniency is consistent with the sentencing court's determination that "even if any or all of the mitigating circumstances existed, 'balanced against the aggravating circumstances found to exist, they would not be sufficiently substantial to call for

leniency.'"[1] *Id.* at 471. And, the sentencing court noted as to Stokley's childhood that "[t]he evidence, at best, is inconsistent and contradictory." The Arizona courts considered the mitigation evidence—including good behavior in jail and childhood circumstances— insufficient to warrant leniency. In light of the Arizona courts' consistent conclusion that leniency was inappropriate, there is no reasonable likelihood that, but for a failure to fully consider Stokley's family history or his good behavior in jail during pre-trial incarceration, the Arizona courts would have come to a different conclusion. *See Hitchcock v. Dugger*, 481 U.S. 393, 399 (1987) (referencing harmless error in connection with the exclusion of non-statutory mitigating evidence). In sum, because the claimed causal nexus error, if any, did not have a substantial or injurious influence on Stokley's sentence, Stokley cannot establish prejudice. *Brecht*, 507 U.S. at 630-34.

In light of the high bar that must be met for this court to stay the mandate, Stokley's motion to stay the mandate is **DENIED.**

---

[1] The sentencing court found the following facts beyond a reasonable doubt. Stokley was convicted of murdering two 13-year-old girls over the July 4th weekend in 1991. Stokley is a person of above average intelligence. At the time of the crime, he was 38 years old. Stokley intended that both girls be killed. He killed one of the girls and his co-defendant killed the other. Before the men manually strangled the girls to death, both men had sexual intercourse with the victims. Both bodies "were stomped upon with great force," and one of the children bore "the clear chevron imprint" from Stokley's tennis shoes on her chest, shoulder, and neck. Both victims were stabbed in their right eyes with Stokley's knife, one through to the bony structure of the eye socket. The girls likely were unconscious at the time of the stabbing. The girls' bodies were dragged to and thrown down a mine shaft.

PAEZ, Circuit Judge, dissenting:

*Maples* changed the law. Stokley asks us not for habeas relief, but to stay the mandate in light of this change and remand for full consideration of whether he can overcome procedural default on his colorable *Eddings* and *Skipper* claims that were not raised because Harriette Levitt abandoned him. The *only* analysis we should do here is to determine whether he has made a prima facie case for abandonment under *Maples* to establish cause, and shown that his prejudice argument has some merit in that he does not raise a frivolous claim. His claim that the Arizona Supreme Court committed causal nexus error in declining to consider mitigating evidence is anything but frivolous. It is a constitutional claim and one that this court should not extend itself to decide on the merits before it was briefed or argued by *either* party.

The majority assumes without deciding that there was a *Maples* error. Respectfully, that was the only question before this court. The majority brushes it aside to get to the final end game, but further confuses our law on prejudice and standards for error review in the process. Because I cannot agree with the majority's approach, I strongly dissent.

I first address why *Maples* error exists in this case. Then I turn to the majority's incorrect and unrestrained analysis of prejudice.

## I. Stokley has shown abandonment

*Maples* is not limited solely to *actual* abandonment. To obtain the remand he requests, Stokley need only make a prima facie showing of abandonment under *Maples* that

might constitute cause to overcome procedural default. *See Moorman v. Schriro*, 672 F.3d 644, 647-48 (9th Cir. 2012). Despite the extremely limited briefing on the pending motion, Stokley has made such a prima facie case of abandonment. Moreover, as the majority recognizes, he has a colorable underlying constitutional claim. Our inquiry should end there. I would grant the motion and remand to the district court for determination of cause and prejudice and, if appropriate, the merits of Stokley's constitutional claim.[1]

*Maples* rests squarely on agency principles. 132 S. Ct. at 922-24. To explain how an agency relationship may be actually or constructively severed, the Supreme Court relied on Justice Alito's concurrence in *Holland v. Florida*, 560 U.S. ——, 130 S. Ct. 2549 (2010), to distinguish attorney negligence from abandonment. "Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." 132 S. Ct. at 923 (citing *Holland*, 130 U.S. at 2568 (Alito, J., concurring)). Justice Alito's concurrence in *Holland* also noted that the agency relationship is constructively severed "particularly so if the litigant's reasonable efforts to terminate the attorney's representation have been thwarted by forces wholly beyond the petitioner's control." *Holland*, 130 S. Ct. at 2568. Indeed, our court's precedent—while not finding abandonment—recognizes that *Maples* rests on agency principles and that a serious breach of loyalty can sever the attorney-client relationship in a manner that may constitute

---

[1] I agree with the majority's assumption that *Maples* may be sufficient to establish the "exceptional circumstance" necessary to justify the exercise of this court's power to stay the mandate following a denial of certiorari.

constructive abandonment sufficient to establish cause. *See Towery v. Ryan*, 673 F.3d 933, 942-43 (9th Cir. 2012) *cert. denied*, 132 S. Ct. 1738 (2012) (separately analyzing two prongs of actual abandonment or "serious breach of loyalty" and distinguishing *Holland*, which involved violations of fundamental canons of professional responsibility, from Towery's circumstances, which did not).

In light of *Maples*, it is now recognizable that Stokley's situation in postconviction proceedings was worse than simply "unenviable." 659 F.3d at 810. Here, the attorney-client relationship was irrevocably broken. Further, the record demonstrates that, once the state was successful in forcing it to be put back together, postconviction counsel Harriette Levitt actively undermined the work of Stokley's replacement counsel and prevented Stokley from investigating and raising his own claims. While it has no legal bearing on the present issue, I note at the outset that Harriette Levitt is the same attorney whose conduct was at issue in the Supreme Court's recently-created ineffective assistance of counsel exception to the once settled rule in *Coleman*. *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Whereas the petitioner in *Maples* "in reality . . . had been reduced to pro se status," 132 S. Ct. at 927, Levitt's actions regarding Stokley's attempts to fairly present his claims arguably left him in a situation worse than a pro se petitioner. If there were ever a case for constructive abandonment under *Maples*, this is it.

Levitt filed her first post-conviction petition eight months after being assigned to the case. During these eight months, she initiated no contact with Stokley. The only communication she had with Stokley was a twenty-minute collect phone call he placed to her. Levitt did not conduct any independent investigation during this period, other than a few

telephone calls lasting less than a total of two hours. According to Stokley, Levitt did not even receive the trial transcripts until more than six months after her appointment, and after the deadline for filing Stokley's petition had passed.

When Levitt finally filed Stokley's petition, she raised only two claims and wrote only three and a half pages of legal argument. Levitt's billing records indicate that, aside from reviewing Stokley's file and transcript, she spent no more than ten hours researching and writing his petition for post-conviction relief. Stokley immediately recognized the inadequacy of the petition and called Levitt to object. Levitt told him that his "trial attorneys didn't make any mistakes" and that he would "probably be executed in 2 or 3 years."

Stokley then took every action he could think of to object to Levitt's continued representation. He wrote a letter to the Superior Court judge, expressing his concerns about the brevity of the petition and Levitt's lack of interest and diligence. He wrote that he found it "evident that my present appeal has been handled with a lick and a promise, rather than being given the conscientious analysis and preparation which should be applied." He asked the court to "appoint an attorney who will apply his or her self and try to do a competent job in this matter." He sent a similar letter to the Arizona Capital Representation Project asking for help. The Superior Court forwarded Stokley's letter to Levitt but took no other action.

Stokley also filed a complaint with the State Bar of Arizona protesting Levitt's handling of his case. The Bar overlooked the posture of Stokley's case and responded that his complaint could be dealt with in *post-trial* proceedings, noting that "[i]f there [was] a judicial determination that the

lawyer acted improperly, [the Bar] would review the matter at that time."

Not surprisingly, the Superior Court denied Levitt's two-claim petition. Levitt then filed a motion to withdraw as Stokley's counsel, citing the Bar complaint filed against her. She wrote that "[t]here has . . . been a complete breakdown of the attorney-client relationship." The court granted the request and appointed Carla Ryan as replacement counsel.

The state immediately moved to reinstate Levitt as Stokley's counsel. The state argued that the initial petition had already been denied, and so there was "no valid reason for . . . paying yet another defense attorney to review the voluminous record for the first time." The state argued in the alternative for the court to limit the scope of Ryan's representation, arguing that, if replacement counsel were appointed, she should be forbidden to "supplement the already-adjudicated petition in some manner," because Arizona rules "do not allow for any such thing." Notably, however, the Arizona Supreme Court eventually did permit Levitt to file a supplemental Rule 32 petition, specifically allowing her to "raise any issue . . . even though it may not have been included in her first petition for post-conviction relief." The state also objected to Ryan's request for co-counsel in an unprofessionally worded opposition, arguing that Ryan was requesting a "side-kick" to "milk[] this case for all it is worth as a cash cow. . . . Capital litigation is not an unlimited pot-boiler for the enrichment of private attorneys." The Superior Court ordered Levitt reinstated, over the objections of both Levitt and Stokley.

Ryan was Stokley's attorney for only one month. During that month, she spent much of her time responding to the

state's attempt to have her removed as counsel. Ryan also moved for reconsideration of the denial of Stokley's post-conviction petition, and sought to amend the petition. Her proposed amended petition included a list of thirty-one new possible claims for relief. Ryan included a claim regarding the ineffectiveness of Levitt. She argued that "the substance of the Petition is deficient" and noted misstatements of law prejudicial to Stokley. Ryan specifically noted that she had not had an opportunity to do a full investigation, and that "other issues may need to be raised."

After one month, Ryan was removed and Levitt was reinstated. Once reinstated, Levitt actively moved to defend herself and undermine Stokley's case. Levitt systematically argued against the claims raised by Ryan. She noted that some were "already raised," others "relate[d] to strategic decisions by the respective attorneys," others were "contrary to well-established caselaw," and still others were "not supported by the facts of the case." Unexplainably, one of the claims Levitt derided as completely meritless was resurrected as the first of two additional claims in the supplemental Rule 32 petition. Thus, Levitt's petition for review and later supplemental filing suggest an overriding concern with defending herself from the "attack on the effectiveness of undersigned counsel, all of which is meritless" rather than any loyal advocacy.

After Levitt was reinstated, Stokley wrote a letter to the Arizona Supreme Court asking for the reappointment of Ryan. This request was denied. Stokley then attempted to prepare his own claims and asked Levitt for a copy of the record. Levitt refused to give it to him. By failing to do so, she interfered with Stokley's attempts to fairly present his claims.

The record shows that (1) both Stokley and his counsel agreed that their relationship had completely broken down; (2) Stokley took numerous steps to try to terminate the relationship and to obtain new counsel; (3) Levitt was reinstated as counsel over Stokley's and her own objections; (4) Levitt was the subject of a Bar complaint; and (5) after she was reinstated as Stokley's attorney, Levitt's primary concern was to defend herself against misconduct charges. She disavowed and undermined the work Ryan had done on Stokley's behalf, and refused Stokley access to his case file which limited his ability to marshal evidence and raise his own claims. Levitt ultimately came to the point where she was actively working against Stokley.

Stokley did everything in his power to sever his relationship with Levitt. The state vigorously advocated to make sure that Levitt was reinstated as his counsel. After the state prevailed, Levitt in effect worked in the state's interest rather than in her client's. As Stokley has argued before the district court and in the moving papers here, Levitt "took up the mantle of the prosecutor." It is hard to imagine a clearer case for constructive abandonment.

The touchstone for understanding the Court's decision in *Maples* is Justice Alito's concurrence in *Holland*, which the Court relies upon in explaining the meaning of "abandonment." *Holland*, 130 S.Ct. at 2568. Justice Alito was not describing what happened in Stokley's case. But he might as well have been.

**II. Stokley's colorable *Eddings* claim is sufficient prejudice to obtain remand.**

Addressing prejudice at this stage is inconsistent with our prior precedent. Nevertheless, I feel compelled to respond to the majority's argument.

The majority first states that, while Stokley's causal nexus claim is colorable, the Arizona Supreme Court committed no actual error. This is incorrect. The majority goes on to assume that, even if the Arizona Supreme Court committed causal nexus error, the error was harmless. I address the second issue first, where the majority conflates structural and harmless error in a manner that confuses our prior case law and, without analysis, potentially closes an open and important question in the habeas law of our circuit.[2] Whatever the ultimate outcome in Stokley's case might have been had we remanded, by conflating structural and harmless error the majority creates tension with our prior case law and in my view sets a bad precedent.

---

[2] As I understand it, the Supreme Court has not addressed whether *Eddings* error is structural nor has this court squarely examined the issue. *Compare Landrigan v. Stewart*, 272 F.3d 1221, 1230 & n.9 (9th Cir. 2001) (applying harmless error review to the state court's failure to consider the defendant's alleged intoxication and past history of drug use as a nonstatutory mitigating factor), *adopted by Landrigan v. Schriro*, 501 F.3d 1147, 1147 (9th Cir. 2007) (en banc) (order), *with Williams v. Ryan*, 623 F.3d 1258, 1270-71 (9th Cir. 2010) (granting habeas relief for an *Eddings* violation without conducting a harmless error analysis), *and Styers v. Schriro*, 547 F.3d 1026, 1035-36 (9th Cir. 2008) (same). Other circuits are split on the issue. *Compare Bryson v. Ward*, 187 F.3d 1193, 1205 (10th Cir. 1999) (collecting cases applying harmless error review), *with Nelson v. Quarterman*, 472 F.3d 287, 314 (5th Cir. 2006) (en banc) (declining to apply harmless error review).

Our prior cases have treated *Eddings* error as structural. We have consistently reversed and remanded *Eddings* cases to the Arizona courts for resentencing, without inquiring as to the likelihood of a different sentencing result. *See*, *e.g.*, *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010); *Styers v. Schriro*, 547 F.3d 1026 (9th Cir. 2008). If an *Eddings* error is structural, as our cases suggest, prejudice is *per se*.

Citing *Hitchcock v. Dugger*, 481 U.S. 393, 399 (1987), the panel concludes that *Eddings* errors are subject to harmless error review under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Even assuming *Eddings* error is nonstructural, the panel appears to have erred in applying *Brecht* here because the state did not argue harmlessness in this court (until its response to the petition for rehearing), an issue on which the state bears the burden. *See Hitchcock*, 481 U.S. at 399 ("Respondent has made no attempt to argue that this error was harmless, or that it had no effect on the jury or the sentencing judge. In the absence of such a showing our cases hold that the exclusion of mitigating evidence of the sort at issue here renders the death sentence invalid."). As best I can tell, after finding *Eddings* error on habeas review, we have never engaged in harmless error review of the sort engaged in here.

Turning back to the majority's finding that no *Eddings* violation occurred, I am unpersuaded by the panel's analysis. Here, the Arizona Supreme Court did precisely what the Eighth Amendment prohibits—it treated mitigating evidence of Stokley's abusive childhood as nonmitigating as a matter of law merely because it lacked a causal connection to the crime. The state court said:

> According to a clinical psychologist, defendant had a chaotic and abusive childhood, never knowing his father and having been raised by various family members. *A difficult family background alone is not a mitigating circumstance. State v. Wallace*, 773 P.2d 983, 986 (1989), *cert. denied*, 494 U.S. 1047 (1990). *This can be a mitigating circumstance only "if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control." Id. . . .* Although [Stokley] may have had a difficult childhood and family life, he *failed to show how this influenced his behavior on the night of the crimes.*

*State v. Stokley*, 898 P.2d 454, 473 (Ariz. 1995) (emphasis added).

This is a clear-cut *Eddings* violation, and the panel majority's failure to recognize it cannot be squared with circuit precedent. We cannot avoid finding an *Eddings* violation, as the panel majority suggests, merely because the Arizona Supreme Court said it considered all mitigating evidence. *See Styers*, 547 F.3d at 1035. When a state court "considers" mitigating evidence, but deems it irrelevant or nonmitigating *as a matter of law* because of the absence of a causal connection to the crime, the court has not considered the evidence in any meaningful sense. *See Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

Unlike the majority I would not reach the issues of either prejudice with respect to procedural default or the merits of the constitutional claim at this stage. When first presented with this claim that the Arizona Supreme Court erred in its review of the death sentence under *Eddings* and *Skipper*, the district court declined to reach the merits because the claim was technically exhausted and procedurally barred. Case 4:98-cv-00332-FRZ, Dkt 70, Order and Opinion on Procedural Status of Claims at 15-16. *No court* has considered the issue of prejudice—either as to procedural default or to the merits of the constitutional claim—because, prior to *Maples*, there was no cause for the procedural default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). All that is required for prejudice at this stage is that the claim has some merit. *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012).

Without the benefit of any briefing or lower court consideration on the issue of prejudice arising from the defaulted *Eddings* and *Skipper* claims, we are not in a position to do what the majority does here. Rather than foreclosing these claims at this stage, I would stay the mandate and remand this case to the district court for the limited purpose of allowing it to determine in the first instance whether cause and prejudice exist, and to consider the merits of the claim if warranted. We would then be in a far better position to review the issue.

For all of the above reasons, I respectfully dissent.