Order; Amended Order; Dissent by Judge PAEZ.
ORDER
The Order issued on November 15, 2012, is withdrawn and an Amended Order is filed concurrently with this order. With that amendment, Judges McKeown and Bea vote to deny Stokley’s petition for panel rehearing and Judge Paez votes to grant the petition. No further petitions for panel rehearing will be entertained.
AMENDED ORDER
Richard Dale Stokley, a state prisoner, was sentenced to death in 1992 for the murders of two 13-year-old girls. After pursuing direct review and post-conviction relief in the Arizona state courts, he filed a habeas petition in federal district court, which was denied on March 17, 2009. Stokley’s appeal from that decision was *403 denied by this court in Stokley v. Ryan, 659 F.3d 802 (9th Cir.2011). On October 1, 2012, the Supreme Court denied Stok-ley’s petition for certiorari. Stokley v. Ryan, — U.S. -, 133 S.Ct. 134, 184 L.Ed.2d 65 (2012). Stokley now asks this court to stay issuance of the mandate on the ground that the Supreme Court’s holding in Maples v. Thomas, — U.S. -, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012), constitutes an intervening change in the law that could warrant a significant change in result. In Maples, the Court held that abandonment by post-conviction counsel could provide cause to excuse procedural default of a habeas claim. Id. at 927.
Under Federal Rule of Appellate Procedure 41(d)(2)(D), this court “must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed.” Fed. R.App. P. 41(d)(2)(D). Nonetheless, this court has the authority to issue a stay in “exceptional circumstances.” Bryant v. Ford Motor Co., 886 F.2d 1526, 1529 (9th Cir.1989), cert. denied, 493 U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1033 (1990). To constitute an exceptional circumstance, an intervening change in law must require a significant change in result for the parties. See Beardslee v. Brown, 393 F.3d 899, 901 (9th Cir.2004) (“[A]n intervening change in the law is an exceptional circumstance that may warrant the amendment of an opinion on remand after denial of a writ of certiorari.”); Adamson v. Lewis, 955 F.2d 614, 619-20 (9th Cir.1992) (en banc) (finding an absence of exceptional circumstances where subsequent Supreme Court authority did not require a significant change in result). The question before us is whether Stokley has presented such an exceptional circumstance.
Stokley asks for a remand to the district court for an evidentiary hearing to determine whether, under Maples, he was “abandoned” by his state post-conviction attorney and thus has cause to excuse his procedural default of his underlying claim that the Arizona Supreme Court failed to consider mitigating evidence in violation of Eddings v. Oklahoma, 455 U.S. 104, 114-15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and Skipper v. South Carolina, 476 U.S. 1, 4-5, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). Under Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), Stokley is barred from litigating this procedurally defaulted claim in a federal habeas proceeding unless he can show both cause for the default and actual prejudice resulting from the alleged error. Because Stokley cannot establish prejudice and thus does not meet the exceptional circumstances threshold, we deny his motion to stay the mandate.
We assume without deciding that there was a Maples error. But regardless of whether Maples provides Stokley cause to excuse his procedural default, Stokley has not made a sufficient showing of actual prejudice. Stokley must establish “not merely that the [alleged error] ... created a possibility of prejudice, but that [it] worked to his actual and substantial disadvantage,” infecting the entire proceeding with constitutional error. See Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (citation omitted) (emphasis in original); see also Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (prejudice requires a showing that the error has a “substantial and injurious effect” on the sentence).
Stokley has a colorable claim that the Arizona Supreme Court, when it reviewed evidence of his abusive childhood and his behavior during pre-trial incarceration, violated the Eddings principle that the court must consider, as a matter of law, all rele *404 vant mitigating evidence. See Arizona v. Stokley, 182 Ariz. 505, 898 P.2d 454, 473 (1995) (“A difficult family background alone is not a mitigating circumstance.... This can be a mitigating circumstance only ‘if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant’s control.’ ... Although he may have had a difficult childhood and family life, [Stokley] failed to show how this influenced his behavior on the night of the crimes.”) (citations omitted); id. (“Although long-term good behavior during post-sentence incarceration has been recognized as a possible mitigating factor, ... we, like the trial court, reject it here for pretrial and presentence incarceration.”).
However, on balance, the Arizona Supreme Court’s opinion suggests that the court did weigh and consider all the evidence presented in mitigation at sentencing. See Stokley, 898 P.2d at 468 (“Consistent with our obligation in capital cases to independently weigh all potentially mitigating evidence ... [w]e turn, then, to a consideration of the mitigating factors.”); id. at 472 (“As part of our independent review, we will address each alleged mitigating circumstance.”); id. at 468 (“The sentencing judge must consider ‘any aspect of the defendant’s character or record and any circumstance of the offense relevant to determining whether the death penalty should be imposed.’ ... The sentencing court must, of course, consider all evidence offered in mitigation, but is not required to accept such evidence.” (citations omitted)); id. at 465 (“[T]his court independently reviews the entire record for error, ... considers any mitigating circumstances, and then weighs the aggravating and mitigating circumstances sufficiently substantial to call for leniency.”); id. at 473 (“Family history in this case does not warrant mitigation. Defendant was thirty-eight years old at the time of the murders.”). The Arizona Supreme Court carefully discussed all the statutory and non-statutory mitigating factors, step by step, in separate paragraphs in its opinion. See id. at 465-74.
However, even assuming the Arizona Supreme Court did commit causal nexus error as to Stokley’s good behavior in jail and his difficult childhood, Stokley cannot demonstrate actual prejudice because he has not shown that the error, if any, had a substantial and injurious impact on the verdict. An error requires reversal only if it “had substantial and injurious effect or influence in determining the ... verdict.’ ” Brecht, 507 U.S. at 623, 113 S.Ct. 1710 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); cf. Cullen v. Pinholster, — U.S. --, 131 S.Ct. 1388, 1408, 179 L.Ed.2d 557 (2011) (holding in a Strickland challenge that the test for prejudice at sentencing in a capital case is “whether there is a reasonable probability that, absent the errors, the sentencer ... wpuld have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” (internal quotation marks omitted)).
The Arizona Supreme Court reviewed and discussed each of the aggravating and mitigating factors individually. The court found three statutory aggravating circumstances were proven beyond a reasonable doubt: (1) Stokley was an adult at the time the crimes were committed and the victims were under the age of fifteen; (2) Stokley was convicted of another homicide committed during the commission of the offense; and (3) Stokley committed the offense in an especially heinous, cruel, and depraved manner. 898 P.2d at 465-68. The Arizona Supreme Court’s conclusion that there were no grounds here substantial enough to call for leniency is consistent with the sentencing court’s determination that *405 “even if any or all of the mitigating circumstances existed, ‘balanced against the aggravating circumstances found to exist, they would not be sufficiently substantial to call for leniency.’ ”[1] Id. at 471. And, the sentencing court noted as to Stokley’s childhood that “[t]he evidence, at best, is inconsistent and contradictory.” The Arizona courts considered the mitigation evidence—including good behavior in jail and childhood circumstances—insufficient to warrant leniency. In light of the Arizona courts’ consistent conclusion that leniency was inappropriate, there is no reasonable likelihood that, but for a failure to fully consider Stokley’s family history or his good behavior in jail during pre-trial incarceration, the Arizona courts would have come to a different conclusion. See Hitchcock v. Dugger, 481 U.S. 393, 399,107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (referencing harmless error in connection with the exclusion of non-statutory mitigating evidence). In sum, because the claimed causal nexus error, if any, did not have a substantial or injurious influence on Stok-ley’s sentence, Stokley cannot establish prejudice. Brecht, 507 U.S. at 630-34, 113 S.Ct. 1710.
In light of the high bar that must be met for this court to stay the mandate, Stok-ley’s motion to stay the mandate is DENIED.

. The sentencing court found the following facts beyond a reasonable doubt. Stokley was convicted of murdering two 13-year-old girls over the July 4th weekend in 1991. Stokley is a person of above average intelligence. At the time of the crime, he was 38 years old. Stokley intended that both girls be killed. He killed one of the girls and his co-defendant killed the other. Before the men manually strangled the girls to death, both men had sexual intercourse with the victims. Both bodies “were stomped upon with great force,” and one of the children bore "the clear chevron imprint” from Stokley’s tennis shoes on her chest, shoulder, and neck. Both victims were stabbed in their right eyes with Stokley's knife, one through to the bony structure of the eye socket. The girls likely were unconscious at the time of the stabbing. The girls' bodies were dragged to and thrown down a mine shaft.