WARDLAW, Circuit Judge,
concurring in part and dissenting in part:
Because McKinney failed to exhaust the dual juries and shackling claims, I agree with the majority’s conclusion that denial of relief on these claims must be upheld. However, I disagree with its analysis of McKinney’s Eddings claim[1] and, therefore, dissent from Part III of the majority’s opinion. It is clear from the record that the sentencing judge improperly refused to consider the mitigating effect of McKinney’s post traumatic stress disorder (“PTSD”) evidence specifically because the judge concluded that this evidence was not causally linked to McKinney’s crimes, contrary to the U.S. Supreme Court’s decisions in Eddings and its progeny. The Arizona Supreme Court repeated that legal error, resulting in a decision that “was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). Further, the Arizona Supreme Court’s characterization of the sentencing judge’s decision was factually inaccurate, resulting “in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2). McKinney has demonstrated that he is entitled to habeas relief regardless of whether Eddings violations are deemed structural error or are reviewed for harmless error. I would therefore reverse the district court’s denial of all relief and remand with instructions to grant McKinney’s habeas petition based on this claim.
I.
It was well established in 1993, when McKinney was sentenced, that “[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.” Eddings v. Oklahoma, 455 U.S. 104, 113-14, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The Supreme Court has clarified that the Eighth and Fourteenth Amendments specifically require the sentencer to fully consider all mitigating evidence, regardless of the lack of a causal connection between the evidence and the defendant’s crime of conviction:
There is no disputing that this Court’s decision in Eddings requires that in capital cases the sentencer ... not be pre- *922 eluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. Equally clear is the corollary rule that the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence. These rules are now well established ....
Skipper v. South Carolina, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (internal quotation marks and citations omitted) (emphasis added); see also Eddings, 455 U.S. at 110, 102 S.Ct. 869. In Smith v. Texas, 543 U.S. 37, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004), the Court explained that such causal “nexus requirements” are “a test we never countenanced and now have unequivocally rejected.” Id. at 45, 125 S.Ct. 400 (citing Eddings, 455 U.S. at 114, 102 S.Ct. 869); see also Smith, 543 U.S. at 45, 125 S.Ct. 400 (holding that it was “plain under [Supreme Court] precedents” that evidence lacking a “nexus” to the crime of conviction “was relevant for mitigation purposes”). Accordingly, the Constitution forbids sentencers in capital cases from refusing to consider any mitigating evidence on the basis that the evidence lacks a nexus to a defendant’s crime of conviction.
It was also well established when McKinney was sentenced that Eddings and its progeny require that the sentencer give “independent mitigating weight” to all relevant mitigating evidence. See Eddings, 455 U.S. at 110, 102 S.Ct. 869. This has been a cornerstone of the Supreme Court’s jurisprudence since Lockett was decided in 1978:
[A] statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant’s character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.
Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (emphasis added). The Court has recognized that the sentencer must perform an individualized analysis of each piece of relevant mitigating evidence: “the sentencer must be free to give ‘independent mitigating weight to aspects of the defendant’s character and record and to circumstances of the offense proffered in mitigation....’” Eddings, 455 U.S. at 110, 102 S.Ct. 869 (quoting Lockett, 438 U.S. at 605, 98 S.Ct. 2954). Supreme Court precedent thus requires the sentencer to give adequate and independent consideration to all relevant evidence that a defendant proffers in mitigation of his crimes.
Finally, the rule announced in Eddings requires that the sentencer actually consider each independent piece of relevant mitigating evidence. See Eddings, 455 U.S. at 113, 102 S.Ct. 869. Lockett and Eddings both emphasize the significance of “the type of individualized consideration of mitigating factors” required by the Eighth and Fourteenth Amendments. See Eddings, 455 U.S. at 105, 102 S.Ct. 869; Lockett, 438 U.S. at 606, 98 S.Ct. 2954. Certainly, the appropriate degree of care or caution that must be accorded to each independent piece of mitigating evidence will vary. See Webster’s Third New International Dictionary 483 (1986) (defining “consider” as “to reflect on: think about with a degree of care or caution”). However, it is clear that whether a sentencer “said he did” enough to comply with the Constitution is irrelevant for constitutional purposes; the true test is whether the sentencer actually exercised “the type of *923 individualized consideration” required by the Constitution. Eddings, 455 U.S. at 105, 102 S.Ct. 869.
II.
McKinney argued at sentencing that he should not be sentenced to death due to his difficult childhood, alcohol addiction, good behavior while incarcerated, and residual doubt concerning his role in the offenses. In addition, McKinney specifically raised his PTSD diagnosis as a mitigating factor independent of the underlying childhood trauma he suffered and as a factor to be given separate weight at sentencing.
As support for imposition of a noncapital sentence, McKinney presented evidence at sentencing as to what even the sentencing judge found to be an “extraordinary” and “traumatic childhood,” which would be “beyond the comprehension and understanding of most people____” Sentencing Hr’g Tr. at 26, July 23, 1993. McKinney’s sister, Diana McKinney, and aunt, Susan Ses-tate, both testified at length concerning McKinney’s horrific childhood. They testified that McKinney grew up in extreme poverty, living in filth, lacking adequate clothing, and suffering constant physical and emotional abuse, largely at the hands of his stepmother. He and his three siblings shared a single bedroom and were expected to do all of the cleaning and cooking in the home. McKinney consistently arrived at school poorly dressed, dirty, and covered in welts and bruises from beatings he received at home. Unsurprisingly, McKinney ran away repeatedly, appearing at the homes of relatives and friends bearing signs that he had been beaten. The sentencing judge found this testimony credible, determining that as a child McKinney was “abused, beaten, and deprived of the necessary care, clothing, and parental love and affection.”
In addition to enduring a horrific childhood, as an adult McKinney suffered serious psychological problems. At sentencing, Dr. Mickey McMahon, a clinical psychologist, testified to his opinion that McKinney suffered from PTSD, writing in his expert report that McKinney “underwent a massive amount of neglect and abuse during his developmental years which in my opinion was sufficient to create a case of Post-Traumatic Stress Disorder.” Dr. McMahon also described numerous ways in which this disorder could have affected McKinney and impaired his ability to control his behavior on the nights of the murders. Specifically, Dr. McMahon testified that McKinney’s PTSD may have caused him to have a “reflexive” and “emotional” response to any confrontation during the burglary, which could have led to his having “diminished capacity” at the time of the murders. Dr. McMahon concluded by testifying that he had no doubt that McKinney suffered from PTSD. In addition to Dr. McMahon’s testimony that McKinney suffered from PTSD, another doctor testified on McKinney’s behalf concerning his below-average intelligence.
Despite this evidence, the sentencing judge refused to give McKinney’s PTSD diagnosis any weight in mitigation because McKinney failed to show that the PTSD had any direct effect on his crimes. In fact, the sentencing judge declined even to make a finding as to whether McKinney actually suffered from PTSD because he concluded that this was irrelevant to his sentencing decision. The sentencing judge initially discussed McKinney’s PTSD in two sentences, which, although nearly incoherent, express the view that the expert’s PTSD diagnosis was, at a minimum, suspect:
However, in viewing Exhibit 3, which defense introduced and Dr. McMahon acknowledged either reviewing or rely *924 ing upon, it appeared that in reviewing that exhibit that even those experts who agree that Post-traumatic Stress Syndrome can result from childhood abuse and be a lingering problem of individuals who have been abused, beaten and deprived of the necessary care, clothing, and parental love and affection that Mr. McKinney was—obviously, through the testimony, was deprived of in this case— nevertheless have concluded as Dr. McMahon indicated, there was a cognitive impairment of the defendant. There was no evidence presented of any organic brain damage or disease of the defendant; that in Exhibit 3, it appears at least in the sample of individuals in that case and comparing those individuals with cognitive impairment, with abuse, where there was not psychotic episodes or neurological damage to a defendant, where at least two or three of those things were present, that if only cognitive impairment and abuse were present, if there was nothing significantly significant in the violent offenses expected to be committed by those individuals, the experts found that there was no significant difference between an individual with cognitive impairment who suffered with child abuse with no history of cognitive abuse or those who had only been abused or only had a cognitive deficit.
Sentencing Hr’g Tr. at 27-28, July 23, 1993.
Exhibit 3, to which the sentencing judge refers, is a paper prepared in 1989 by researchers at the New York University School of Medicine, Department of Psychiatry, which attempts to predict which violent delinquents will go on to commit adult aggressive offenses. Dorothy Otnow Lewis, M.D. et al., Toward a Theory of the Genesis of Violence: A Follow-up Study of Delinquents, 28 J. Am. Acad. Child & Adolescent Psychiatry 431 (1989). The paper concludes that “a constellation of interacting clinical and environmental variables is a far better predictor of future violent behavior than is early aggression alone.” Id. at 436. In this passage of the sentencing transcript, the sentencing judge is stating that because there was no evidence that McKinney suffered certain of the clinical variables identified in the paper, i.e. a psychotic episode or neurological damage, there was no correlation between his diagnosis of PTSD and the commission of his crimes. And because the sentencing judge so concluded, he unconstitutionally screened out PTSD as a matter of law, before it could be weighed along with the other mitigating and aggravating factors. Of course, doing so was nonsensical as well, because the study only purports to predict which abused adolescents will become violent adults who commit murder. At this point, McKinney had been convicted of two murders, so he had already committed what the paper describes as “the most serious of crimes.” Id. at 435. The issue for the sentencing judge was not whether McKinney’s crimes were predictable; it was whether the fact that McKinney suffered from PTSD reduced his culpability for the murders—an issue the judge declined to address because his reading of the study caused him to conclude that the PTSD diagnosis was not causally related to McKinney’s crimes.
Having done so, the sentencing judge explicitly declined to make a finding as to whether McKinney actually suffered from PTSD, because he viewed this as irrelevant given the lack of a nexus between the PTSD and McKinney’s crimes:
But, I think more importantly than that, certainly not trying to dispute him as an expert on what all that meant, it appeared to me that Dr. McMahon did not at any time suggest in his testimony nor did I find any credible evidence to suggest that, even if the diagnoses of Post-traumatic Stress Syndrome were accu *925 rate in Mr. McKinney’s case, that in any way significantly impaired Mr. McKinney’s conduct.
Sentencing Hr’g Tr. at 28 (emphasis added). If this articulation of an impermissible nexus test were not clear enough, the sentencing judge next confirmed that he excluded the PTSD evidence from his mitigation analysis because there was no evidence linking the PTSD to McKinney’s criminal conduct:
[I]t appeared to me that based upon all these circumstances that there simply was no substantial reason to believe that even if the trauma that Mr. McKinney had suffered in childhood had contributed to an appropriate diagnosis of Post-traumatic Stress Syndrome that it in any way affected his conduct in this case.
Id. at 29. The sentencing judge reaffirmed for a third time that he excluded the PTSD diagnosis from his consideration of whether to sentence McKinney to life or death because he did not believe this evidence had a causal relationship with McKinney’s crimes under Arizona’s death penalty statute:
I’ve determined that even though there may be some evidence by Dr. McMahon that would demonstrate under [Ariz. Rev.Stat. Ann. § 13-751](G)(1) a capacity by the defendant to appreciate the wrongfulness of conduct, it was not significantly impaired, either by the use of drugs, alcohol or the possibility of a diagnosis of Post-traumatic Stress Syndrome.
Id. at 30. There can be no doubt that the sentencing judge disposed of McKinney’s PTSD diagnosis by concluding that its validity was irrelevant because the lack of a nexus between the PTSD and McKinney’s criminal conduct made it nonmitigating as a matter of law. As discussed more fully below, McKinney presented this evidence for two reasons: to suggest that he had diminished capacity on the night of the murders and to demonstrate that he was less culpable for his crimes than someone who did not suffer from PTSD. The sentencing judge addressed the first argument, finding that McKinney’s capacity was not diminished. However, he failed to address whether the PTSD diagnosis had any impact on McKinney’s culpability for his crimes. This serious Eddings/Lockett error violated the Eighth and Fourteenth Amendments.
III.
On direct appeal, the Arizona Supreme Court[2] agreed with the sentencing judge that the absence of a causal relationship between McKinney’s PTSD diagnosis and his crimes rendered this evidence nonmiti-gating as a matter of law. Thus, the Arizona Supreme Court’s decision was “contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). In addition, the Arizona Supreme Court failed to accurately describe or analyze the sentencing judge’s rationale in sentencing McKinney. As a result, the Arizona Supreme Court’s decision also was “based on an unreasonable determination of the facts” under 28 U.S.C. § 2254(d)(2). These legal and factual errors satisfy § 2254(d), entitling McKinney to habeas relief under AEDPA.
First, the Arizona Supreme Court’s opinion repeats the sentencing judge’s un *926 constitutional treatment of McKinney’s PTSD diagnosis:
[T]he record shows that the judge gave full consideration to McKinney’s childhood and the expert testimony regarding the effects of that childhood, specifically the diagnosis of post-traumatic stress disorder (PTSD).

Assuming the diagnoses were correct, the judge found that none of the experts testified to, and none of the evidence showed, that such conditions in any way significantly impaired McKinney’s ability to conform his conduct to the law.

State v. McKinney, 185 Ariz. 567, 917 P.2d 1214, 1234 (1996) (emphasis added). In doing so, the court agreed with the sentencing judge that McKinney’s PTSD evidence was nonmitigating as a matter of law because McKinney failed to show a relationship between the diagnosis and his crimes. As discussed above, this was contrary to then-clearly established constitutional law and therefore meets the requirements of § 2254(d)(1).[3]
Second, the Arizona Supreme Court’s decision was based on two independent “unreasonable determination[s] of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2). Contrary to the court’s bald statements, the sentencing judge never “gave full consideration to” McKinney’s PTSD diagnosis as a possible mitigating factor favoring a life sentence over death. McKinney, 917 P.2d at 1234. In fact, while the sentencing judge did quite a bit of talking about PTSD, much of this discussion related to the predictive analysis in Exhibit 3 as his reason for screening out the PTSD diagnosis as a mitigating factor, and refusing to weigh it with other relevant factors. Certainly, nothing in the record indicates that the sentencing judge exercised “the type of individualized consideration of mitigating factors ... required by the Eighth and Fourteenth Amendments.” Eddings, 455 U.S. at 105, 102 S.Ct. 869 (quoting Lockett, 438 U.S. at 606, 98 S.Ct. 2954). Instead, the sentencing judge only “considered” McKinney’s PTSD evidence in the sense that he determined that there was no causal relationship between it and McKinney’s crimes. As discussed above, this is insufficient under Eddings and Lockett. Thus, the Arizona Supreme Court’s decision was based on the unreasonable factual determination that the sentencing judge fully considered McKinney’s PTSD evidence as a mitigating factor. This factual error satisfies § 2254(d)(2).
The Arizona Supreme Court’s second unreasonable factual determination concerns the sentencing judge’s refusal to accept McKinney’s PTSD diagnosis for sentencing purposes. While the sentencing judge expressly declined to determine whether McKinney suffered from PTSD on the basis that the question was irrelevant to his sentencing determination, the *927 Arizona Supreme Court incorrectly stated that the sentencing judge “assum[ed] the diagnoses were correct” when sentencing McKinney. McKinney, 917 P.2d at 1234. However, as set forth above, the record contradicts this statement. In fact, the sentencing judge specifically declined to make a finding on this point on the grounds that “even if the diagnoses of [PTSD] were accurate in Mr. McKinney’s case, [I do not believe that it] in any way significantly impaired Mr. McKinney’s conduct.” Sentencing Hr’g Tr. at 28, July 23, 1993; see also id. at 30 (“[E]ven though there may be some evidence [demonstrating] a capacity by the defendant to appreciate the wrongfulness of conduct [sic], it was not significantly impaired [by] the possibility of a diagnosis of Post-traumatic Stress Syndrome.” (emphasis added)). Thus, the sentencing judge never accepted the diagnosis as correct. Instead, he did not believe it was necessary to determine whether McKinney suffered from PTSD because the absence of a causal relationship between the PTSD and McKinney’s crimes rendered this evidence nonmitigat-ing as a matter of law. Given this, the Arizona Supreme Court’s decision was based on two “unreasonable determination[s] of the facts in light of the evidence presented in the State court proceeding.” § 2254(d)(2).
While unconstitutional, the Arizona courts’ inconsistent treatment of McKinney’s childhood and PTSD mitigation evidence is explicable as consistent with then-operative Arizona state law. Section 13-751 of the Arizona Revised Statutes sets forth the factors which permissibly may be considered as mitigating under state law. Ariz.Rev.Stat. § 13—751(G)(1). At the time, § 13-751(G)(1) permitted sentencers to give mitigating effect to mental impairments, such as PTSD, only when “[t]he defendant’s capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired but not so impaired as to constitute a defense to prosecution.” Given the language of this statute, -it is not surprising that both Arizona courts’ decisions track that language when discussing McKinney’s PTSD evidence. Just compare the sentencing judge’s statement that “even if the diagnoses of Post-traumatic Stress Syndrome were accurate in Mr. McKinney’s case, [I do not believe] that in any way significantly impaired Mr. McKinney’s conduct,” and the Arizona Supreme Court’s statement that “none of the evidence showed ... that such conditions in any way significantly impaired McKinney’s ability to conform his conduct to the law,” McKinney, 917 P.2d at 1234, with the language of § 13-751(G)(1). Further, as discussed above, the sentencing judge went so far as to make his reliance on § 13-751(G)(1) explicit, stating that McKinney’s PTSD evidence was irrelevant because “even though there may be some evidence ... that would demonstrate under (G)(1) a capacity by the defendant to appreciate the wrongfulness of conduct, it was not significantly impaired [by] the possibility of a diagnosis of Post-traumatic Stress Syndrome.” Sentencing Hr’g Tr. at 30, July 23,1993.
It was not until 2006, over a decade after McKinney was sentenced, that the Arizona Supreme Court acknowledged that the United States Constitution required it to construe § 13-751(G)(l)’s nexus requirement as useful to only the determination of how much weight to give mitigating evidence—as opposed to excluding it from consideration. See Schad v. Ryan, 671 F.3d 708, 723 (9th Cir.2011) (citing State v. Newell, 212 Ariz. 389, 132 P.3d 833, 849 (2006)). However, prior to 2006, Arizona state courts routinely imposed an unconstitutional nexus requirement on mental impairments. See, e.g., Williams v. Ryan, 623 F.3d 1258 (9th Cir.2010) (finding a constitutional violation where Arizona *928 courts refused to consider drug use as mitigating due to lack of a nexus); Styers v. Schriro, 547 F.3d 1026, 1035 (9th Cir. 2008) (per curiam) (finding a constitutional violation where Arizona courts refused to consider PTSD evidence as mitigating due to lack of a nexus). We can infer from the Arizona state courts’ pre-2006 treatment of mental impairment mitigation evidence in capital sentencings that the Arizona state courts here simply followed suit. However, regardless of the explanation for the Arizona Supreme Court’s various factual and legal errors, these constitutional violations establish that McKinney is entitled to habeas relief under AEDPA. See 28 U.S.C. § 2254(d).
IV.
There is no question that McKinney’s PTSD evidence is “relevant mitigating evidence” for constitutional purposes. Eddings, 455 U.S. at 114, 102 S.Ct. 869; see also Tennard v. Dretke, 542 U.S. 274, 284, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004) (“[T]he meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding than in any other context, and thus the general evidentiary standard—any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence—applies.” (internal quotation marks omitted)). The Supreme Court has confirmed that disorders like PTSD are relevant for mitigation purposes:
[Ejvidence about the defendant’s background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.
Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (internal citations and quotation marks omitted) abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).
We have also specifically held that PTSD evidence is relevant mitigation evidence. See Styers, 547 F.3d at 1035. In Styers, we granted a habeas petition when the Arizona courts refused to consider PTSD mitigation evidence under circumstances virtually identical to those presented here. Styers, convicted of murder, had produced evidence at sentencing that he suffered from PTSD. Id. The Styers sentencing judge refused to consider the evidence on the basis that “two doctors who examined defendant could not connect defendant’s condition to his behavior at the time of the conspiracy and the murder.” Id. (citing State v. Styers, 177 Ariz. 104, 865 P.2d 765 (1993)). As in the present appeal, the Arizona Supreme Court in Styers ignored this language, instead asserting, like here, that the sentencing judge had “considered all of the proffered mitigation.” Id. (citing Styers, 865 P.2d at 778). However, unlike the majority here, in Styers, we refused to accept this conclu-sory statement as dispositive. Id. Instead, we recognized that the Arizona courts had failed to weigh Styers’s PTSD as evidence in mitigation on the basis that the experts did not connect the PTSD to his behavior at the time of the murder. Id. We held that the Arizona court had applied an unconstitutional “nexus test to conclude that Styers’s post traumatic stress disorder did not qualify as mitigating evidence,” and granted Styers’s petition on the ground that this was “directly contrary to the constitutional requirement that all relevant mitigating evidence be considered by the sentencing body.” Id.
*929 Here, as in Styers, the State of Arizona has sentenced an individual to death without complying with the constitutional requirement that the sentencer adequately consider “any relevant mitigating evidence.” Eddings, 455 U.S. at 114, 102 S.Ct. 869. In both cases, the Arizona courts refused to consider the mitigating impact of PTSD evidence because the defendant failed to establish a causal relationship between the disorder and his criminal conduct. However, unlike the majority here, in Styers we correctly recognized that this legal error was contrary to clearly established constitutional law, and granted habeas relief accordingly. I would grant McKinney relief on the Ed-dings/Lockett claim. It is abundantly clear on this record that McKinney is entitled to a new sentencing proceeding in which the sentencer actually considers his PTSD diagnosis as a mitigating factor as required by the Constitution.
V.
Whether McKinney must also demonstrate actual prejudice for the writ to issue is an unsettled question in the Ninth Circuit. Historically, we have treated Ed-dings errors as structural, granting the writ without inquiring as to the likelihood of a different sentencing result. See, e.g., Williams, 623 F.3d 1258; Styers, 547 F.3d 1026; see also Stokley v. Ryan, 705 F.3d 401, 405 (9th Cir.2012) (Paez, J., dissenting). However, recently a panel of our Court refused to grant the writ despite assuming that an Eddings error had occurred at the state level. Stokley, 705 F.3d at 405. Instead, the panel examined whether the petitioner could demonstrate actual prejudice under Brecht v. Abraham-son, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Stokley, 705 F.3d at 403-05. Concluding that the petitioner could not do so, the panel refused to grant the writ. Id. Despite this, the Stokley panel majority stopped well short of overruling our precedent, which, in any event, it was without the power to do. See United States v. Parker, 651 F.3d 1180, 1184 (9th Cir.2011) (per curiam) (“Only the en banc court can overturn a prior panel precedent.”); see also Miller v. Gammie, 335 F.3d 889, 892-93 (9th Cir.2003) (holding that a three judge panel “may reexamine normally controlling circuit precedent” only “where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority”). As a result, Stokley has created an intra-circuit split concerning whether Eddings errors are structural or are reviewed for actual prejudice. Absent an en banc call to correct this issue, I would maintain the uniformity of our prior precedents by remaining faithful to the numerous cases that have treated Eddings/Lockett errors as structural, and not following the one outlier decision that failed to do so. See, e.g., Williams, 623 F.3d 1258.
However, even assuming that Ed-dings/Lockett violations are reviewed for “actual prejudice,” I would conclude that the Eddings/Lockett error in this case had a “substantial and injurious effect or influence” upon the sentencer’s decision. Brecht, 507 U.S. at 627, 113 S.Ct. 1710. The Brecht standard examines whether the constitutional error substantially influenced the outcome of a ease:
[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence.
*930 Merolillo v. Yates, 663 F.3d 444, 454 (9th Cir.2011) (quoting Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). “Where the record is so evenly balanced that a judge ‘feels himself in virtual equipoise as to the harmlessness of the error’ and has ‘grave doubt about whether an error affected a jury [substantially and injuriously], the judge must treat the error as if it did so.’ ” Id. (quoting O’Neal v. McAninch, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)) (alteration in original) (internal quotations omitted).
McKinney has argued that he is entitled to a new sentencing proceeding because the sentencing judge’s failure to appropriately consider his PTSD diagnosis resulted in a death sentence when a life sentence was called for based on his lessened culpability. Here, McKinney’s sentence was “substantially swayed” by the sentencing judge’s error. Merolillo, 663 F.3d at 454. A sentencer who appropriately considered all the relevant mitigating evidence as required by Lockett could easily have concluded on the basis of Dr. McMahon’s testimony that McKinney’s PTSD was a substantial mitigating factor. Instead, the sentencing judge’s unconstitutional refusal to consider the effect of McKinney’s PTSD on his culpability for his crimes “creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty.” Lockett, 438 U.S. at 605, 98 S.Ct. 2954. Given the significant non-PTSD mitigation evidence that McKinney presented at sentencing, it cannot be said “with fair assurance” that a sentencer who also appropriately considered the PTSD evidence would have sentenced McKinney to death. Mer-olillo, 663 F.3d at 454. I would therefore reverse the district court and remand with instructions to grant McKinney’s habeas petition, and to require that the state court hold a new sentencing hearing within ninety days.

. The panel majority agrees that we should address McKinney’s uncertified Lockett/Ed-dings claim because the resolution of this issue is “debatable amongst jurists of reason.” Miller-El v. Cockrell, 537 U.S. 322, 330, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

. As Judge Thomas makes eminently clear in his dissent in Poyson v. Ryan, 711 F.3d 1087 (9th Cir.2013), "At the time it decided this case, the Arizona Supreme Court applied a causal nexus test similar to the one the U.S. Supreme Court held unconstitutional in Ten-nard [v. Dretke, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004)].” Poyson, 711 F.3d at 1105 (Thomas, J., dissenting) (listing Arizona cases).

. In concluding that the "Arizona Supreme Court did not apply an unconstitutional nexus test to McKinney’s mitigating evidence,” the majority fails to distinguish between Arizona’s unconstitutional treatment of McKinney’s PTSD diagnosis and its permissible treatment of other mitigation evidence. However, we have never held that a state’s permissible treatment of some mitigation evidence can somehow "cure” the unconstitutional treatment of other mitigating evidence. Nor could we have, as Eddings and Lockett make clear that the Eighth and Fourteenth Amendments require that all relevant evidence must be given "independent mitigating weight.” Eddings, 455 U.S. at 110, 102 S.Ct. 869 (emphasis added). Therefore, it is irrelevant for constitutional purposes that the sentencing judge adequately considered some of McKinney’s mitigation evidence; that he failed to adequately consider independently the PTSD diagnosis is sufficient to establish that McKinney is entitled to habeas relief.